## B. F. HASTINGS, Respondent, *v.* J. NEELY JOHNSON, Appellant.

The State Courts have jurisdiction to hear and determine causes left pending in the late United States Territorial Courts.

When a written promise is made for the payment of a sum certain, payable in gold coin at a day certain, and is followed by a stipulation that in the event it is not paid at maturity the promisee may take judgment for an amount which, in the legal tender notes of the government, is equal in value to the amount of gold coin first mentioned, this is a *debt* for the amount of gold coin first mentioned.   The latter clause is a new penalty which cannot be enforced. The judgment must be for the *debt* and interest.

APPEAL from the District Court of the Second Judicial District, Hon. S. H. Wright presiding.

The facts are stated in the Opinion.

*R. M. Clarke* and *J. Neely Johnson,* for Appellant, made the following points:

1st. The Court erred in assessing the damage without proof of the value of legal tender notes on the day of trial.   The contract, if good for any sum in excess of $2,500, was only so upon proof of the depreciated value of treasury notes at the time of the trial and date of the judgment.

The answer is in no sense an admission of the fact found.

2d. The Court erred in rendering judgment for " ten per cent. interest" on five thousand dollars.   The contract was to pay inter-

est on $2,500, at ten per cent. per annum.   (See Record, p. 9.)

·3d. The legal value of treasury notes at the time of the judgment, was one hundred cents for each dollar, and the Court could not, upon proof or otherwise, affix to them any other value.   The measure of damage and the amount for which judgment should have been taken is the sum named in the body of the note, ($2,500) and interest on that amount at ten per cent. per annum.   (*Milliken* v. *Sloat*, 1 Nevada, 583 ; *Milliken* v. *Sloat*, 1 Nevada, 599 ; *Carpentier* v. *Atherton*, 25 Cal. 564, 575, and 582 ; *Feemiter* v. *Johnson*, 1 J. J. Marshall, 69.)

4th. The judgment in this case was for double the sum warranted by law, both as principal and interest, and must for that reason be reversed.   (3 Cal. 396 ; *Adams* v. *Dunlap*, 1 Dana, 584 ; 1 A. K. Marshall, 354 ; 1 Nevada, 161 ; 2 Johnson's Cases, 65 ; 19 Wend. 90.)

*Williams & Bixler*, for Respondents.

The defendant failed to prosecute his appeal from the order over-ruling motion for new trial ; this Court cannot now notice the first point made by appellant.

As to second point of appellant, if the Court could assess the damages at $5,000, the statute provides for the interest on that amount.

· The third and fourth points made by appellant involve the question, Could the Court enforce this contract according to its terms ?

The contract sued on is not strictly a note.   (See Byles on Bills, top page 162 ·to 166, side page 71 to 74 ; *Cole* v. *Ross*, 9 B. Monroe, 393 ; Sedgwick on Measure of Damages, top page 252 to 254, side page 240 to 242.)

The objection made that the complaint is not good, treating this as an ordinary contract and not a note, comes too late.   A mere defect in form is cured by verdict.   (See following cases : 1 Chitty's Pleadings, 673 ; *Happe* v. *Stout*, 2 Cal. 462 ; *Garcia* v. *Satrustegui*, 4 Cal. 244 ; *Minturn* v. *Burr*, 16 Cal. 107 ; *Mott* v. *Smith*, 16 Cal. 554–5 ; *Galliardo* v. *Hoberlin*, 18 Cal. 394 ; *Deputy* v. *Stapleford*, 19 Cal. 305.)

This was in effect a contract to deliver so much gold (coined) at

a certain time, and if not delivered according to contract, then to pay its value by way of damages.

There could be but two objections to such a contract: one that it was immoral, the other that it violates some positive enactment. Nothing has been shown in the law prohibiting such contracts; it is not suggested that such a contract would be immoral.

On the subject of jurisdiction we assert these propositions:

1st. That the concurrent action of the State and National Governments was necessary to a transfer of the Territorial records to State custody.

2d. That an Act of Congress was not necessary to Federal concurrence in the transfer. That concurrence might be evidenced in any of the ordinary modes adopted by contracting parties, and might even be deduced from a failure to dissent within a reasonable time.

3d. That the State action was complete when the Constitution was adopted. (See Secs. 1 and 4, Art. 17, Schedule.) And the Federal concurrence was complete upon the admission of the State under that Constitution. And the Congress subsequently ratified it in the passage of the Act organizing the United States District Court for the District of Nevada, by making provision for the only cases arising in the late Territory which had not been previously provided for by our State Constitution.

4th. Even admitting that United States *records* cannot be transferred to State custody without Federal consent, still the State has power to determine what shall be the evidence of debts—whether in judgment or otherwise—between her citizens, and for the mode of their collection.

Opinion by BEATTY, J., BROSNAN, J., concurring.

This was an action brought in the Second Judicial District of the *Territory* of Nevada. The pleadings were perfected in that Court, but no trial had. After the organization of the State Government, the case was tried and determined in the Second Judicial District of the *State* of Nevada.

One of the points made on appeal is, that the State Court had no jurisdiction of the action of the parties thereto, and therefore that the judgment was void.

This proposition is maintained on the ground that the Territorial

Courts were Courts created by Congress, and deriving all their authority from that source.   That being so created, the State Courts could not exercise any control over the records of the late Territorial Courts without the express sanction of Congress.   In support of this proposition, counsel refer the Court to three decisions of the Supreme Court of the United States, to wit: *Hunt* v. *Palao*, 4 Howard, 588; *Benner* v. *Porter*, 9 Howard, 235, and *Freebone* v. *Smith*, 2 Wallace, 173.

The case of *Hunt* v. *Palao*, was an action of ejectment tried in the Territorial Court of Florida whilst still a Territory.   After that Territory was organized and admitted as a State of the Union, a writ of error was asked for to bring up the case for review.   The Supreme Court refused the writ, on the ground that the Court which had rendered the judgment had ceased to exist, and no other Court had succeeded to its jurisdiction.   For, argues the Court, it would be idle to review this decision and pronounce it erroneous, if there be no Court to which we can direct our mandate for the correction of the error.

And in arguing the points raised, the Court says, in speaking of the record and proceedings of the Territorial Court:

" The proceedings are not in the possession of any Court authorized to exercise judicial power over them, but in the possession of an officer of another Court merely for the purpose of safe-keeping ; for the law of Florida does not place these records in the custody of the State Court, but in that of the Clerk; nor does it subject him to the control of the Court in any manner in regard to them."

Then, so far as the facts of this case were before the Supreme Court, there was no question as to whether the State laws might give the State Court jurisdiction to hear and determine cases that were pending in the Territorial Courts at the time of the change of government; but simply a ruling that the State Courts without legislation had nothing to do with the records or proceedings of the late Territorial Courts.

But the Supreme Court did not stop with deciding the point before them, but went on to use the following language: " And, indeed, if it had placed them in the custody of the Court it would not have removed the difficulty; for the law of the State could not have made them records of that Court, nor authorized any

proceedings upon them. The Territorial Court of Appeals was a Court of the United States, and the control over its records, therefore, belongs to the General Government, and not to the State authorities ; and it rests with Congress to declare to what tribunal these records and proceedings shall be transferred, and how these judgments shall be carried into execution or reviewed upon an appeal or writ of error." This latter quotation is purely a *dictum*, but coming from a Court of great dignity and being not entirely foreign to the subject under discussion, it is entitled to great weight, but not to the authority of a solemn adjudication of a point at issue before the Court.

The case of *Benner* v. *Porter*, 9 Howard, 235, was an appeal to the Supreme Court of the United States, from a judgment rendered in an Admiralty case by the Territorial Court of Florida, in 1846. The Territory of Florida had been admitted as a State of the Union in 1845. But after the admission of the State, the Territorial Court continued to exercise jurisdiction in Admiralty cases up to the time a United States District Court was fully organized. The Supreme Court simply decided that the Territorial Court could not, under the Constitution of the United States, exercise such jurisdiction. That after Florida became a State, judicial powers could only be exercised therein by State Courts or by United States Courts, presided over by Judges appointed to hold office during good behavior, whilst the Judges of the Territorial Courts were appointed only for four years. So, the question now under discussion was not involved in this case.

But the doctrine in regard to the jurisdiction of State Courts, which we have quoted from 4th Howard, having been referred to in the argument of this cause, the Court took occasion to explain and modify that dictum.

On page 247 of 9th Howard, Mr. Justice Nelson, in delivering the opinion of the Court in this latter case, uses this language : " We have said that the assent of Congress was essential to the authorized transfer of the records of the Territorial Courts, in suits pending at the time of the change of Government, to the custody of State tribunals. It is proper to add, to avoid misconstruction, that we do not mean thereby to imply or express any opinion on the question, whether or not, without such assent, the State judicatures

would acquire jurisdiction.    This is altogether a different question. And besides, the Acts of Congress that have been passed in several instances on the admission of a State, providing for the transfer of the Federal causes to the District Courts, as in the case of the admission of Florida, already referred to, and saying nothing at the time in respect to those belonging to State authority, may very well apply an assent to the transfer of them by the State to the appropriate tribunal.    Even the omission on the part of Congress to interfere at all in the matter, may be subject to a like implication. And a subsequent assent would doubtless operate upon past acts of transfer by the State authority."

Now, the Constitution of Nevada provides for the transfer of all pending causes from the Territorial to the State Courts.    Congress receives the State into the Union, and admits her representatives who present themselves under said Constitution without objection.

Congress makes no provision for these pending causes, nor any provision for the custody of the records of the late Territorial Courts.    Here it appears to us is such a tacit assent to the action of the State authorities as the Court seems to intimate would be sufficient.

The case in 2d Wallace seems to throw no new light on this subject.    Besides, it appears to us the State Courts, on every principle of common sense, ought to have jurisdiction in such cases.    The State may prescribe what preliminary steps shall be taken to give these Courts jurisdiction as between its own citizens.    It may require service to be made by a Sheriff, or allow it to be made by a private individual, or by publication.    Why not then provide that the State Courts shall have jurisdiction of all causes of controversy between its own citizens which have been commenced in the Territorial Courts, without further service of summons, and why not say the cause shall proceed to trial on such issues as are made up in the Territorial Courts ?    So far as the power is concerned, we see no objection.    It is true, the records of the late Territorial Court belong to the General Government.    Congress has the *power* to do what it pleases with them.    It might order them to be removed to Washington City.    This might create trouble and inconvenience. But we do not think it affects the question of power.    The State may, as long as the records of the Territorial Courts are within her

territory and control, use those records as the foundation of civil proceedings to determine the rights of the citizens in its own Courts. If Congress should remove these records, or restrain their use by the State Courts, some law to substitute copies, or some other remedial statute, would have to be passed by the State.

We conclude, then, on this point, that the State Courts have jurisdiction to hear and determine causes left pending in the late Territorial Courts. And the District Court did not err in hearing and determining this cause.

The obligation on which this suit was brought is in the following form:

CARSON CITY, N. T., March 30th, 1864.

[$2,500.] On the first day of July, A.D. one thousand eight hundred and sixty-four, (1864) I promise to pay E. M. Van Kleeck or order twenty-five hundred dollars, in current gold coin of the United States of America, with interest thereon from date at the rate of ten per cent. per annum; and if said sum and interest is not paid when due, in coin as aforesaid, then the said Van Kleeck is authorized to sue for the same, and shall have and recover judgment in a sum which, in the legal tender notes of the United States of America, shall in amount equal the value in the market of the above town at the date of said judgment the whole of said sum of gold coin in legal tender notes.

J. NEELY JOHNSON.

The complaint alleges substantially, that when suit is brought, one dollar in legal tender notes is only worth forty cents in gold, and prays for a judgment on that basis. The answer alleges they are worth fifty cents in gold.. The judgment was rendered for just twice the face of the notes, or at the rate of fifty cents on the dollar for legal tenders.

There is no statement, and the record, we think, perhaps, fails to show some of the alleged errors. But the record does present the only real question (other than the one of jurisdiction) of importance in the case. That question is, should the judgment on the facts presented by the complaint and answer have been for $2,500, or for what $2,500 in gold would, at the time of breach of contract, been worth in legal tender notes?

Hastings *v.* Johnson.

This, we confess, is a question somewhat embarrassing. We are not called on here, as under the State Specific Contract Act, to enter a judgment declaring the same shall not be paid in that which the law of the Government says shall be a legal tender for all private debts (which of course includes money judgments); but the simple question is, what shall be the *amount* of the judgment upon such a contract as that sued on? The apparent equity of the case and the intention of the parties would alike seem to require that the judgment of the Court should be for the value of $2,500 in gold, when reduced to the standard of legal tender notes. But we think there are certain inflexible rules of law which will not admit of such a judgment.

The instrument sued on certainly creates a debt. It is a debt of $2,500. That it is by its terms payable in gold does not make it less a debt. The instrument is at the beginning in form of a promissory note for $2,500, and interest from date at ten per cent. per annum. This note is followed by a sort of penal clause, attaching a penalty or prescribing what judgment shall be rendered if it is not paid at maturity. Under the rulings of this Court in several cases, there can be no question but that defendant, on the day it fell due, might have discharged the note by the payment of $2,500, and ten per cent. interest thereon, in legal tender notes. He could have so discharged it because the note is a *debt* in its most technical sense, and the law has said legal tender notes shall be a tender for all *debts*.

Now, if the defendant could have paid the note off in legal tenders the day it fell due, it appears to us he is still entitled to do the same by tendering, in addition to the debt, the accumulated interest and costs, and that it was an error to render judgment for a larger amount.

This is somewhat similar to an ordinary penal bond. If an obligor in a bond binds himself to pay $1,000 at a day certain, but attaches to that bond a recital that it is given to secure the payment of $500, and interest at ten per cent. per annum from date, that if the $500 and interest is paid at a certain day the bond is to become void, but if not paid the entire bond is to be payable, no Court would enforce the payment of more than $500 and interest. This appears to us a very similar case, only the real sum to be paid is mentioned first

and the consequences of nonpayment at the day of maturity follows, instead of preceding that sum, as in ordinary penal bonds.

There is also another objection to enforcing such a contract according to its letter. It appears to us to be contrary to the policy of the law to enforce a penalty against a party for doing what the law says he may do—for paying his debts with that currency which the law says shall be a legal tender for all debts.

We hold, then, that the judgment in this case should have been for $2,500 and interest thereon at the rate of ten per cent. per annum from the date of the note, and it was error to render judgment for any greater amount.

It is stated by counsel for respondent that certain liens have attached, and certain rights have grown up under this judgment which would be injuriously affected by a reversal, but might be preserved under a modification of this judgment, so made as to give the appellant all the relief to which he is entitled, but not to destroy the lien of the judgment.

As such course seems to be equitable and just under the circumstances of this case, we will make such order as will at once give the appellant the relief to which he is entitled, and preserve the lien of the respondents.

It is therefore ordered that if the respondent, within ten days after the filing of this opinion, shall file with the Clerk of the District Court of the Second Judicial District of the State of Nevada a release from all of said judgment, except the costs in the Court below and the sum of twenty-five hundred dollars principal, and interest thereon from the thirtieth day of March, A.D. 1863, at the rate of ten per cent. per annum, and will enter the costs of this appeal as a credit on the remainder of said judgment, the judgment of the Court below, so modified, will be affirmed; otherwise this Court will, after the expiration of ten days, make an order reversing the judgment of the Court below.

If any money has been collected on this judgment, or any sales made hereunder for an amount in excess of what remains due on this judgment, after the same has been reduced in accordance with the views herein expressed, the Court below will make all necessary orders to protect the rights of appellant.

It is further ordered that a remittitur may forthwith issue in this case.

Opinion by BEATTY, J., BROSNAN, J., concurring.

This case only differs from the one between the same parties in this, that the original debt was for $1,500 instead of $2,500, and the judgment was rendered in the Territorial District Court before the State Constitution was formed.

It is to be governed by the same principles as case No. 514. It is therefore ordered that if the appellant, within ten days after the filing of this opinion, shall file with the Clerk of the District Court of the Second Judicial District of the State of Nevada a release from all of said judgment which is in excess of fifteen hundred dollars and interest thereon at the rate of ten per cent. per annum from the thirtieth day of March, 1863, and the costs adjudged to plaintiff in the Court below, and will enter the costs of this appeal as a credit on the judgment thus reduced, and also will credit on the judgment thus reduced whatever may have been made by any execution heretofore issued in this case, (unless the same has already been credited) then the judgment in the Court below, so modified, will be affirmed.

It is further ordered that a remittitur may issue immediately on the filing of this opinion, and the filing of the release herein specified.